UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARLEY T. o/b/o C.M.T.S.,[1]

                                               Plaintiff,          Case # 23-CV-477-FPG

v.                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
_____

## INTRODUCTION

Carley T. ("Plaintiff") brings this action on behalf of her son ("C.M.T.S.") pursuant to Title XVI of the Social Security Act. She seeks review of the final decision of the Commissioner of Social Security that denied C.M.T.S.'s Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 10, 13. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

C.M.T.S.'s application for SSI was filed with the Social Security Administration (the "SSA") in November 2020. Tr.[2] 57-58. C.M.T.S. was alleged to have been disabled since November 2020. *Id.* On May 13, 2022, Administrative Law Judge Mark Solomon ("the ALJ") issued a decision finding that C.M.T.S. is not disabled within the meaning of the Act. Tr. 15-33.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

At the time of the ALJ's decision, C.M.T.S. was eight years old. Tr. 57. In April 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of

impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed C.M.T.S.'s benefits application under the process described above. At step one, the ALJ found that C.M.T.S. has not engaged in substantial gainful activity. Tr. 18. At

step two, the ALJ found that C.M.T.S. has severe impairments of attention deficit hyperactivity disorder ("ADHD") and seizure disorder. Tr. 19. At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. *Id.* Next, the ALJ found that C.M.T.S.'s impairments, alone or in combination, do not functionally equal a Listings impairment. Tr. 21-32. The ALJ concluded that C.M.T.S. had a "less than marked" limitation in every domain, *id.*, except for "Caring for Yourself" and "Health and Physical Well-Being," in which C.M.T.S. had "no limitation." Tr. 30-32. Therefore, the ALJ concluded that C.M.T.S. is not disabled. Tr. 33.

## II.   Analysis

Plaintiff challenges the ALJ's analysis on four grounds, which the Court addresses in turn.

### a.   DMDD

Plaintiff contends that the ALJ failed to properly consider C.M.T.S.'s disruptive mood dysregulation disorder ("DMDD").[3] ECF No. 10-1 at 12-20.

In the benefits application, Plaintiff alleged that C.M.T.S. suffered from DMDD, stating that "some days he cannot control his anger and mood swings which causes him to get called to go home from school." Tr. 58. In February 2020, when C.M.T.S. was in first grade, Plaintiff reported to a mental-health provider that C.M.T.S. had recently punched a classmate and threatened to kill himself. Tr. 545. During that school year, C.M.T.S. had punched teachers in the stomach and kicked chairs and tables. *Id.* C.M.T.S. suffered from "rages" about "three to four times a day." *Id.* At the appointment, C.M.T.S. displayed oppositional behavior, saying "no to a great number of things even before [the provider] was [done] getting her question out of

---

[3] DMDD is "a childhood condition of extreme irritability, anger, and frequent, intense temper outbursts." *Santiago v. Soc. Sec. Admin.*, No. 18-CV-148, 2018 WL 6985011, at *3 n.1 (E.D. La. Dec. 6, 2018).

her mouth." *Id.* The provider diagnosed C.M.T.S. with DMDD. Tr. 546. In May 2020, C.M.T.S. was prescribed Risperdal to help with his DMDD. Tr. 541. His dosage was increased to 1 mg when Plaintiff continued to complain of incidents of rage and acting out. Tr. 535.

In October 2020, C.M.T.S. received an occupational therapy evaluation. Tr. 479. The school psychologist who conducted the evaluation noted that C.M.T.S.'s defiance and impulsivity increased when C.M.T.S. was not receiving, or was in the process of changing, his medications. Tr. 483. Still, there is evidence that C.M.T.S.'s problematic behaviors significantly decreased during the 2020-2021 school year due to his medication. C.M.T.S.'s IEP dated December 2020 indicates that C.M.T.S.'s behavior improved with the adjustment of his medication. Tr. 503. Jessica Kwiatkowski, one of C.M.T.S.'s teachers, reported in January 2021 that C.M.T.S. had no problems interacting and relating with others or caring for himself. Tr. 471, 473. She stated that C.M.T.S. "has had a very positive start to the 2020-2021 school year" and that she had not "witnessed any physical effects of the mental condition or medication." Tr. 474. In February 2021, state-agency review consultant B. Stouter, M.D., reviewed C.M.T.S.'s medical records and concluded that he had less than marked limitations in interacting and relating with others, and no limitation in caring for himself. Tr. 62-63. In May 2021, another state-agency review consultant, J. Meyer, M.D., concurred with Dr. Stouter's opinion. Tr. 76-77.

At a mental-health appointment in July 2021, Plaintiff reported that C.M.T.S. was "doing really well" and that his "rages" had significantly decreased "over the last month or so." Tr. 760. By this time, C.M.T.S. was taking 1.5 mg of Risperdal. *Id.* In February 2022, C.M.T.S.'s treating provider, Aimee DiPasqua, M.D., stated that C.M.T.S.'s symptoms are well-managed with medication. Tr. 766. She opined that C.M.T.S. was moderately limited in social functioning, mildly limited in interacting and relating with others, and mildly limited in caring

for himself. Tr. 765-66. At the March 2022 hearing, Plaintiff testified that C.M.T.S.'s symptoms were well-managed with his medication, but that he had some difficulty with compliance when he visited his father. Tr. 45-46. Also in March 2022, C.M.T.S.'s grandmother submitted a letter to SSA stating that C.M.T.S. has "more control over his outbursts" when on medication. Tr. 292.

In his decision, the ALJ did not expressly determine whether C.M.T.S.'s DMDD constituted a severe impairment. Instead, because C.M.T.S. "exhibited a constellation of symptoms that has resulted in varying diagnoses for his mental health conditions," including DMDD and ADHD, the ALJ wrote that he would "consider[] all mental health symptoms regardless of the diagnosis." Tr. 19.

On appeal, Plaintiff contends that, in fact, the ALJ did not adequately consider C.M.T.S.'s DMDD. She points out that the ALJ did not explicitly discuss the relevant Listing for DMDD—Listing 112.04—and she asserts that the ALJ "largely ignor[ed]" C.M.T.S.'s DMDD in determining whether C.M.T.S.'s impairments functionally equaled the severity of a Listings impairment. ECF No. 10-1 at 14, 17.

The Court declines to remand the matter on this basis. Generally, an ALJ's decision need not be explicit in every detail or exhaustive in its discussion of the evidence. All that is required is that an ALJ's analysis "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Remand may be warranted where a court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Otherwise, so long as the "the evidence of record permits [the court] to glean the rationale of an ALJ's decision," an ALJ is not required to "mention[] every item of

testimony presented to him or [] explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Here, although the ALJ did not expressly analyze Listing 112.04 or discuss C.M.T.S.'s DMDD in great detail, the Court is able to "glean the rationale" of the ALJ's decision. *Id.* The ALJ recognized that C.M.T.S. suffered from "frequent episodes of defiant and disruptive behavior." Tr. 20. He summarized relevant evidence relating to C.M.T.S.'s DMDD, including his Risperdal prescription, his difficulties at school, and his IEP. Tr. 22-24. Furthermore, the ALJ highlighted the evidence indicating that C.M.T.S.'s DMDD was well-managed with medication, including (a) Kwiatkowski's opinion in January 2021 that C.M.T.S. could adequately interact and relate with others and care for himself, Tr. 471, 473; (b) Plaintiff's report that C.M.T.S. was "doing really well" with a higher dosage of Risperdal in July 2021, Tr. 760; and (c) Dr. DiPasqua's February 2022 opinion that C.M.T.S.'s symptoms were well-managed with medication, Tr. 766. *See* Tr. 24-26. As to Dr. DiPasqua's opinion, the ALJ found it "persuasive," noting that C.M.T.S.'s "symptoms are well managed [with medication] but if he stopped taking them his functioning would be poor." Tr. 26. In short, while it is perhaps not as explicit as it could have been, the Court can readily glean from the ALJ's decision that he believed the symptoms of C.M.T.S.'s DMDD—including his aggression, rage, self-injurious conduct, and defiant behavior—were well-managed with medication. As a result, the Court can sufficiently discern the ALJ's reasoning with respect to the six domains and the Listings: when managed with medication, C.M.T.S.'s DMDD did not cause the sort of functional limitations that Plaintiff and others had previously observed.

Therefore, remand is not warranted on the theory that the ALJ failed "to properly consider [the] limitations stemming from [C.M.T.S.'s] mood disorder." ECF No. 10-1 at 19; *accord Berry*, 675 F.2d at 467-69 (ALJ's failure to present specific rationale as to why claimant's conditions did not meet Listing did not warrant remand, where court could "look to other portions of the ALJ's decision" to conclude "that his determination was supported by substantial evidence").

### b. Duty to Develop Record

Plaintiff asserts that the ALJ failed to develop the record because there are gaps regarding C.M.T.S.'s mental-health treatment and school records. ECF No. 10-1 at 20-23. Plaintiff's counsel notified the ALJ of the outstanding records at the March 2022 hearing. Tr. 42. The ALJ gave counsel three weeks to submit those records. *Id.* On April 11, 2022, counsel requested an additional week to obtain the records. Tr. 295. On April 22 and April 25, 2022, the SSA reached out to counsel to determine status of the outstanding evidence. Tr. 296-97. After counsel failed to respond to those inquiries, the ALJ closed the record and proceeded with his decision. Tr. 15-16.

Plaintiff contends that, regardless of counsel's inaction, the ALJ had an independent obligation to seek out those records himself. *See* ECF No. 10-1 at 22. Under the circumstances, the Court cannot agree.

It is true that "the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted). This duty "exists even when . . . the claimant is represented by counsel." *Id.* The Second Circuit has indicated that the ALJ may rely on the claimant's counsel to obtain missing evidence under some circumstances,

8

but it has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (summary order).

In *Jordan*, the Second Circuit determined that remand was not warranted even though the ALJ failed to obtain records from a treating physician, because [i] "counsel volunteered to secure [the physician's] records; [ii] the ALJ kept the record open to allow counsel to do so, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; [iii] counsel subsequently contacted the Social Security Administration to advise it that [the claimant] had nothing further to add to the record; and [iv] [the claimant] did not request the ALJ's assistance in contacting or securing evidence from [the physician]." *Jordan*, 142 F. App'x at 543.

Consistent with *Jordan* and *Frye*, the Court concludes that the ALJ took the requisite "independent steps to complete the record," thus satisfying his duty to develop the record. *Sotososa v. Colvin*, No. 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016). Counsel agreed to obtain the records at the hearing, Tr. 42; the ALJ gave counsel three weeks to obtain the records and granted an extension of time, Tr. 15-16, 295; and the SSA reached out to counsel twice to determine the status of the matter, Tr. 296-97; and neither Plaintiff nor counsel ever requested the ALJ's assistance. Remand is not warranted on this ground.[4] *Accord Frye*, 485 F. App'x at 488 n.2 (finding that the ALJ had fully developed the record where the ALJ "specifically requested the submission of any additional relevant evidence prior to the

---

[4] The Court notes that Plaintiff does not articulate how these records might have supported her claim. *See* ECF No. 10-1 at 20-23. While the ALJ acknowledged that some gaps existed in the record, Tr. 24, the record did include a February 2022 medical opinion by Dr. DiPasqua, which post-dated both gaps. Tr. 763-67. That opinion provides a longitudinal perspective of C.M.T.S.'s ADHD and DMDD treatment. Other evidence, including Plaintiff's hearing testimony and the letter of C.M.T.S.'s grandmother, also provides insight into C.M.T.S.'s functioning during the timeframe in which the gaps occurred. *See* Tr. 24.

administrative hearing, held the record open subsequent to the administrative hearing so that counsel could submit additional evidence, contacted counsel when no further evidence was received, and, at counsel's request, granted an extension of time to obtain evidence").

    **c.    Kwiatkowski's Opinion**

Plaintiff asserts that the ALJ failed to adequately explain his treatment of Kwiatkowski's teacher questionnaire. Kwiatkowski had proffered opinions on five of the functional domains, and identified serious or very serious difficulties in certain areas, including reading and comprehending written material, applying problem-solving skills, and completing classwork and homework. Tr. 469-70. The ALJ found Kwiatowski's opinion "partly persuasive," Tr. 25, but proceeded to conclude that C.M.T.S. had less than marked limitations in acquiring and using information and attending and completing tasks. Tr. 27-28. Plaintiff argues that the ALJ did not sufficiently explain "why, if the ALJ found [] Kwiatkowski's opinion persuasive," he did not find C.M.T.S. to have marked limitations in these areas. ECF No. 10-1 at 25.

The ALJ provided a sufficient rationale on this issue, however. He summarized Kwiatkowski's opinion, including her identification of serious problems in certain areas. Tr. 25. The ALJ went on to say, however, that the C.M.T.S. showed improvement academically when his ADHD symptoms were managed. *See id.* As support, the ALJ cited, *inter alia*, the opinion of Dr. DiPasqua, who stated that C.M.T.S. did not suffer from significant learning or concentration difficulties when on his medications. Tr. 766. It is therefore evident from the ALJ's decision that the ALJ rejected Kwiatkowski's more serious limitations given the evidence that those limitations were linked to his mental-health conditions, which improved with medication.[5] Plaintiff's argument does not justify remand.

---

[5] Plaintiff does not develop any argument as to why this rationale for rejecting portions of Kwiatkowski's opinion was erroneous.

### d.      Structured Setting

Finally, Plaintiff claims that the ALJ failed to consider C.M.T.S.'s "highly structured, small group setting in school." ECF No. 10-1 at 26. In Plaintiff's view, C.M.T.S.'s IEP shows he needed significant supports to function adequately in a school setting, and even those supports "did not fully alleviate his symptoms of ADHD and [DMDD]." ECF No. 10-1 at 26; *see also* Tr. 504-13. Although Plaintiff concedes that there is evidence that C.M.T.S.'s improved with medication, she argues the ALJ "did not consider whether C.M.T.S.'s functioning would deteriorate in the absence of his structured setting." ECF No. 10-1 at 27. The Court disagrees.

When considering a child claimant's functional abilities, "the ALJ must consider the effect that a structured or supportive setting may be having, and how the child would function outside of that structured or supportive setting." *Nicole P. v. Comm'r of Soc. Sec.*, No. 20-CV-454, 2021 WL 3887259, at *8 (W.D.N.Y. Aug. 31, 2021); *see also* 20 C.F.R. § 416.924a(b)(5)(iv). This is "[b]ecause a structured educational setting may minimize signs and symptoms of a claimant's impairment(s)." *Jennifer N. v. Comm'r of Soc. Sec.*, No. 19-CV-1672, 2021 WL 916018, at *4 n.7 (W.D.N.Y. Mar. 10, 2021) (internal quotation marks and brackets omitted). "Even if the [child] is able to function adequately in the structured or supportive setting, the ALJ must consider how the claimant functions in other settings and whether the claimant would continue to function at an adequate level without the structured or supportive setting." *Id.* (internal brackets omitted). "For example, if the [child's] symptoms or signs are controlled or reduced in a structured setting, the ALJ must consider the amount of help the [child] needs from his or her parents, teachers, or others to function as well as she does; adjustments made to structure the [child's] environment; and how the [child] would function without the structured or supportive setting." *Id.* (internal quotation marks, ellipsis, and brackets

11

omitted). The regulations specifically direct the ALJ to consider the child's use of special-education services. *See* 20 C.F.R. § 416.924a(b)(7)(iv).

In this case, the ALJ noted C.M.T.S.'s learning difficulties and the special education services he received at school. Tr. 20. The ALJ summarized C.M.T.S.'s IEP. Tr. 20, 23-24. The ALJ connected C.M.T.S.'s need for a structured setting to his impairments, including ADHD and DMDD, and the ALJ inferred from the record that, as C.M.T.S.'s functioning improved with medication, so did his academic functioning in school. *See* Tr. 20. It can therefore be gleaned from the ALJ's decision that he found that the need for a structured setting described in the December 2020 IEP would not be reflective of C.M.T.S.'s functioning when on medication. *See* Tr. 20, 27, 28. This conclusion is supported by Dr. DiPasqua's February 2022 opinion, in which she states that C.M.T.S. is only mildly limited in his abilities to acquire and use information and attend and complete tasks "[w]hile taking medications." Tr. 766.

Accordingly, the Court cannot agree with Plaintiff that the ALJ failed to adequately consider C.M.T.S.'s structured school setting.[6]

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 18, 2024
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[6] Again, Plaintiff does not develop any argument as to why this rationale for giving less weight to the structured school setting was erroneous.